IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
WHEELING DIVISION

ELECTRONICALLY
FILED
04/24/2021
U.S. DISTRICT COURT
Northern District of WV

DIANA MEY, on behalf of herself
and a class of others similarly situated,

    Plaintiff,

v.

Civil Action No. 5:21-CV-62 (Bailey) _____

MATRIX WARRANTY SOLUTIONS, INC.,
MATRIX FINANCIAL SERVICES, LLC,
SING FOR SERVICE, LLC, HARD TACK, LLC,
and JOHN DOE DEFENDANTS 1-5.

    Defendants.

# COMPLAINT

Plaintiff Diana Mey ("Plaintiff"), on behalf of herself and a class of others similarly situated, states as follows for her Complaint against Defendants Matrix Warranty Solutions, Inc., Matrix Financial Services, LLC, SING for Service, LLC, Hard Tack, LLC, and John Doe Defendants 1-5 (collectively, "Defendants"):

**Preliminary Statement**

1. Ms. Mey brings this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices.

2. Defendants and their agents, acting as a common enterprise to promote and sell extended consumer warranties, knowingly engaged in a pattern and practice of illegal telemarketing in violation of the TCPA. In particular, Defendants and their agents violated the TCPA by (i) initiating calls to Ms. Mey and other putative class members whose numbers are

registered on the National Do Not Call Registry, and (ii) initiating calls to Ms. Mey and other putative class members using artificial or prerecorded messages.

3. Because the calls to Ms. Mey were transmitted using technology capable of generating thousands of similar calls per day, Ms. Mey brings certain of her claims on behalf of a proposed nationwide class of persons who also received illegal telephone calls from or on behalf of Defendants in violation of the TCPA.

4. A class action is the best means of obtaining redress for the Defendants' illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties and Jurisdiction**

5. Plaintiff Diana Mey is an individual residing in Wheeling, West Virginia.

6. Defendant Matrix Warranty Solutions, Inc. d/b/a Element Protection ("Matrix") is a Nevada corporation with a principal place of business in Dallas, Texas. It regularly conducts business in this District, as it did with Plaintiff.

7. Defendant Matrix Financial Services, LLC is a Delaware limited liability company with a principal place of business in Dallas, Texas. It regularly conducts business in this District, as it did with Plaintiff.

8. Defendant SING for Service, LLC d/b/a MEPCO is a Delaware limited liability company with a principal place of business in Chicago, Illinois. It regularly conducts business in this District, as it did with Plaintiff.

9. Defendant Hard Tack, Inc. d/b/a Dealer Renewal Services ("Hard Tack") is a Delaware corporation with a principal place of business in West Palm Beach, Florida. It regularly conducts business in this District, as it did with Plaintiff.

10. Defendants John Does 1-5 are unidentified agents or vendors of the named Defendants that made calls in violation of the TCPA or otherwise participated in the common enterprise alleged herein.

11. At all relevant times, Defendants conducted business in West Virginia, solicited business in West Virginia, engaged in persistent course of conduct in West Virginia, and/or have derived substantial revenue from goods sold and services provided in West Virginia.

12. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Ms. Mey's claims arise under federal law. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 as to the remaining claims arising under state law.

13. Venue is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Ms. Mey's claims occurred in this district. In particular, the telemarketing calls to Ms. Mey occurred in this district.

**Defendants' Illegal Conduct**

14. Matrix is a provider of extended warranty services.

15. Matrix markets these extended warranty services to consumers through various means, including through unsolicited telemarketing calls.

16. Matrix markets its services through an opaque network of sales agents, like Hard Tack. Matrix and its sales vendors employ various telemarketing strategies, including the use of artificial or prerecorded messages.

17. To increase the reach of their efforts in writing extended warranty contracts, Matrix and/or its authorized sales agents used automated technology to place thousands of calls with artificial and/or prerecorded messages. Through this method, Matrix and its agents shift the burden of wasted time to the consumers they call with unsolicited messages.

18. Ms. Mey's cellular telephone numbers are 304-281-XXXX, 304-905-XXXX, and 304-280-XXXX. Ms. Mey's numbers were at the time of the calls listed on the Do Not Call Registry.

19. Despite her being listed on the Do Not Call Registry, Defendants, directly or through one or more intermediaries, initiated prerecorded telephone calls to Ms. Mey to induce sales of Matrix's extended warranty services.

20. On April 27, 2017, Ms. Mey received a call from 682-267-1875 to 304-281-XXXX. When Ms. Mey answered the call, the following rerecorded message was played: "Hi. This is Heather. I'm calling from the dealer processing department regarding your vehicle's warranty. We sent you a final notice in the mail letting you know that your warranty had expired and this is a final courtesy call to renew the warranty before we close the file. Would you like to speak to a warranty specialist?"

21. In order to identify the source of the calls, Ms. Mey feigned interest in the service offering by answering, "yes." Another prerecorded message followed: "Thank you for calling. If your car has less than 150 thousand miles, press 3 now. Or if you would like your number on the DNC, press 7." Ms. Mey instead pressed dial key "1" and spoke to a live agent. Ms. Mey continued to feign interest in the service offering and authorized the live agent to charge her credit card.

22. Thereafter, Ms. Mey received a service contract by email. Although the contract identifies Dealers Alliance Corporation as the "Administrator," policy holders were directed to contact "Matrix Warranty Solutions at 1-855-500-MATRIX."

23. On May 19, 2017, Ms. Mey received a call from 505-717-0838 to 304-281-XXXX. Upon answering the call, the same prerecorded message from "Heather" was played. Ms. Mey again pressed dial key "1" to speak with a live agent. However, after a 31 second pause, the called disconnected.

24. On May 22, 2017, Ms. Mey received a call from 484-223-3341. Although Ms. Mey was unable to answer this call, an online consumer forum attributes the number to "Heather" from similar prerecorded messages inquiring about expired vehicle warranties.

25. On June 20, 2017, Ms. Mey received a call from 610-426-0895. Again, Ms. Mey was unable to answer this call, but the same online consumer forum attributes the number to "Heather" from "dealer processing."

26. On April 6, 2020, Ms. Mey received a call from 954-360-8137. A live agent identified himself as "Melvin" and began pitching extended vehicle warranties. Ms. Mey was busy at that time, so Melvin offered to call her back later. Ms. Mey agreed.

27. Nearly two hours later, on April 8, 2020, Ms. Mey received a call from 954-360-8137 to 304-280-XXXX. The same live agent from earlier in the day—now identifying himself as "Melvin Daniel"—again pitched an extended vehicle warranty. Ms. Mey continued to feign interest in the service offering and, in order to identify the true identity of the caller, authorized the live agent to charge her credit card.

28. Two days later, Ms. Mey received a copy of the extended warranty policy by email. The email was sent by "Dealer Renewal Services," which is believed to be Hard Tack.

29. The header of the policy was branded with "The Element" logo, and the footer of the policy contained a logo claiming that the product was "Matrix Inspired." The policy identifies Dealer Renewal Services (i.e., Hard Tack) as the "Selling Company," Matrix Financial Services, LLC as the "Obligor," Matrix Warranty Solutions as the "Administrator," and Sing for Service, LLC d/b/a MEPCO as the "Payment Plan Provider."

30. More information about "The Element" coverage plans can be found at https://www.elementprotectionplans.com/. Notably, users of the website are encouraged to "contact us" at 3100 McKinnon Street, Suite 420, Dallas Texas, which happens to be Matrix's principal place of business.

31. Eventually, Ms. Mey received a paper copy of the policy via USPS. The return address on the envelope was stamped as "Matrix Payment Solutions powered by Mepco."

32. Ms. Mey never consented to be called by or on behalf of Defendants. Nor did Ms. Mey have a prior business relationship with Defendants.

**Class Allegations**

33. As authorized by Rule 23 of the Federal Rules of Civil Procedure, Plaintiff sues on behalf of all other persons or entities similarly situated throughout the United States.

34. The class of persons Plaintiff proposes to represent include:

> **Prerecord Class.** All persons within the United States (a) to whom Defendants or their agents initiated a telephone call promoting Defendants' products or services, (b) to a residential and/or cellular telephone number, (c) using artificial or prerecorded voice

messages, (d) at any time four years before the date this action was commenced through the date of class certification.

**DNC Class.** All residential telephone subscribers within the United States (a) who has registered his or her telephone number on the National Do Not Call Registry and (b) received more than one telephone call within any 12-month period by or on behalf of Defendant (c) at any time four years before the date this action was commenced through the date of class certification.

35. Excluded from the classes are Defendants, any entities in which the Defendants have a controlling interest, the Defendants' agents and employees, any judge to whom this action is assigned, and any member of the judge's staff and immediate family.

36. The identities of proposed class members are ascertainable through the Defendants' phone records and customer databases.

37. Upon information and belief, potential class members number in the thousands, at least. Individual joinder of these persons is impracticable.

38. Ms. Mey is a member of each class and sustained the same injury as those in the putative classes.

39. There are questions of law and fact common to Ms. Mey and to the proposed classes, including but not limited to:

    a. Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls using artificial or prerecorded messages;

    b. Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls to residential telephone numbers on the do-not-call registry;

  c. Whether Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf obtained prior express written consent from the call recipients;

  d. Whether the violations of the TCPA were negligent, willful, or knowing; and

  e. Whether Ms. Mey and the class members are entitled to statutory damages against Defendants.

40. Ms. Mey's claims are based on the same facts and legal theories, and therefore are typical of the claims of class members.

41. Ms. Mey will fairly and adequately represent the interests of the class. She is represented by counsel skilled and experienced in class actions, including TCPA class actions.

42. The actions of the Defendants are applicable to the class and to Ms. Mey.

43. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.

44. The likelihood that individual class members will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case, and given the small recoveries available through individual actions.

45. Ms. Mey is not aware of any class litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

# COUNT I
## Violations of the TCPA, 47 U.S.C. § 227(b)

46. Ms. Mey incorporates the allegations from all previous paragraphs as if fully set forth herein.

47. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii) and (b)(1)(B).

48. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

49. Under the TCPA, a person or entity can be liable for calls made on its behalf, even if the person or entity does not directly place the calls. 47 U.S.C. § 227(c)(5).

50. As explained by the FCC, the agency charged with interpreting and enforcing the TCPA, the applicable rules "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See* Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, Memorandum and Order, 10 FCC Red. 12391, 12397 ¶ 13 (1995).

51. The foregoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to the cellular telephone number of Ms. Mey using prerecorded messages.

52. Defendants' violations were negligent, willful, and knowing.

## COUNT II
### Violations of the TCPA, 47 U.S.C. § 227(c)

53. Ms. Mey incorporates the allegations from all previous paragraphs as if fully set forth herein.

54. Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf made telemarketing calls to Ms. Mey's residential telephone, which was listed on do-not-call registry, in violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c)(2).

55. Ms. Mey received more than one telephone call within a 12-month period by or on behalf of Defendants in violation of the TCPA.

56. Defendants violations were negligent, willful, and knowing.

WHEREFORE, Ms. Mey prays for the following individual and class-wide relief:

A. Certification of the proposed class;

B. Appointment of Ms. Mey as class representative;

C. Appointment of undersigned counsel as class counsel;

D. Judgment permanently enjoining Defendants from engaging in unlawful telemarketing practices;

E. Judgment awarding any other injunctive relief necessary to ensure Defendants' compliance with the TCPA;

F. Judgment awarding Ms. Mey and all class members statutory damages of $500 for each negligent violation of the TCPA and $1,500 for each knowing violation;

G. Judgment holding Defendants jointly and severally liable for the conduct alleged herein; and

JURY TRIAL DEMANDED

          **DIANA MEY**

          By Counsel

          /s/ Andrew C. Robey
          Ryan M. Donovan (WVSB #11660)
          Andrew C. Robey (WVSB #12806)
          HISSAM FORMAN DONOVAN RITCHIE PLLC
          P.O. Box 3983
          Charleston, WV 25339
          t: 681-265-3802
          f: 304-982-8056
          rdonovan@hfdrlaw.com
          arobey@hfdrlaw.com